[No. 8389. Department Two. December 2, 1909.]

DANIEL JONES, *Appellant*, v. SEATTLE BRICK & TILE COMPANY, *Respondent*.[1]

EXECUTORS AND ADMINISTRATORS—SALES—VALIDITY—IRREGULARITIES. Upon an administrator's sale of mortgaged property to pay off the mortgage, in which, upon petition and notice therefor, the court ordered a sale of other property in case of a deficiency, a sale accordingly to pay the deficiency, with deed issued, confirmed by the court, is not void (as against parties claiming under a title not derived from the deceased) by reason of the fact that Bal. Code, § 6289, requires, in case of such a deficiency, that the mortgagee file a claim for the balance payable in due course of administration; since the court had jurisdiction, and Bal. Code, § 6475, provides that no sale shall be void or called in question by one claiming adversely to the title of the deceased or under a title not derived from the deceased, for any irregularity, if it appears that the administrator was licensed to make the sale by an order of a court having jurisdiction of the estate, if a deed in legal form was executed and delivered; the omission of statutory proceedings for a deficiency sale in due course of administration being in such case an irregularity only.

TAXATION—FORECLOSURE—VALIDITY—PROCESS—SERVICE ON PARTIES NOT INTERESTED. A foreclosure of a tax delinquency certificate, under the act of 1899, which did not define the owner or authorize proceedings against the persons appearing as owners on the tax rolls, is void, where the action proceeded upon personal service against defendants who had no interest in the land, and no publication was had against unknown owners or any other service had; as the owner never had his day in court.

JUDGMENT—PRESUMPTIONS—PROCESS. Where the findings of the court show that no service was had except upon parties who had no interest in the land, there is no presumption in support of jurisdiction that another valid service was had upon other necessary parties.

Appeal from a judgment of the superior court for King county, Yakey, J., entered August 13, 1909, upon findings in favor of the defendant, in an action to quiet title against a tax foreclosure. Reversed.

[1]Reported in 105 Pac. 238.

*Willett, Oleson & Willett,* for appellant.

*Peters & Powell* and *Marion Edwards,* for respondent.

DUNBAR, J.—This action was brought by plaintiff, to declare void two tax deeds, alleged to be clouds on his title to lots 8 and 9, block 6, of South Seattle. The complaint alleges title in plaintiff by mesne conveyance, through the administrator of the estate of J. F. Hawks, deceased, and that the tax foreclosure proceedings resulting in a tax deed to defendant's grantor were void, for the reason that the court had no jurisdiction to enter judgment in which the tax sale was had. Proper tender was made. The defendant answered, and put in issue plaintiff's claim of title from the Hawks estate, denied the invalidity of the tax foreclosure proceedings and admitted the issuing of the certificates and bringing of the suits as alleged. The defendant further alleged that the name of George R. Fisher appeared on the treasurer's roll for the year 1899 as the owner of said lots. Certificates of delinquency were issued to one Anna F. Smith, and regularly foreclosed. In the years 1895-6-7-8 and 1900 the owners of such lots appeared on the treasurer's rolls as unknown. The cause was tried to the court. It made findings of facts and conclusions of law in favor of the defendant. Judgment was entered, and appeal follows.

On the first proposition, viz., the validity of appellant's title, the court found the death of Hawks as alleged, the ownership in fee simple in him of the land in dispute; that he died intestate, and that thereafter, by petition, one Henry W. Lung was appointed administrator of his estate; that the superior court had jurisdiction to administer the estate of the deceased, and that said administrator Lung duly qualified as administrator and entered upon the discharge of his trust; that an inventory of said estate was made and filed, wherein was listed and appraised, as belonging to the estate of said deceased, divers and sundry parcels of real property, situated in King county, including said lots 8 and 9; that no

claim was ever filed or proved against said estate, except one claim by William Curtis Ward, made upon a promissory note of said deceased, payable to order of Daniel Jones, which note was secured by a mortgage on certain of the lots described in the inventory; that this note was, before maturity, indorsed and delivered by said Daniel Jones to said William Curtis Ward, was duly assigned, and was proved and allowed by the administrator; that said note and mortgage were filed in said estate, the amount of said claim being $4,715; that no person ever made any application to said court to sell any part of said estate, except that on November 29, 1899, said William Curtis Ward presented to said court a petition for the sale of said mortgaged property, reciting that he had theretofore filed his claim, etc., and reciting the conditions of the mortgage; reciting the fact that the estate showed that the deceased left no personal property, the value of the estate, and setting forth what amount was due him from the estate; setting forth no other facts, but praying for a sale of the mortgaged property at public auction, and praying that if the amount realized at such sale should be insufficient to pay the amount of such claim, then so much of the residue of such estate as might be necessary should be sold at public sale upon giving due notice thereof as provided by law; that on the face of said petition and in the indorsement thereon the same was denominated "Petition to sell mortgaged property"; that an order to show cause was thereupon regularly issued, which order recited the filing of said petition to sell the mortgaged property, and in the event of a deficiency, to sell so much as might be necessary of the balance of said estate to satisfy said petitioner's claim, which order to show cause was regularly served on said administrator; that thereafter an amended order to show cause was issued on said petition, returnable February 9, 1900, which said amended order to show cause recited the filing of said petition to sell the mortgaged property, and so much of the rest of said estate as might be necessary to pay any deficiency, and which

said amended order to show cause was duly, regularly, and legally served upon said administrator, and was published for four successive weeks in a weekly newspaper printed and published in King county, Washington, and of general circulation therein; that on the day fixed in said amended order to show cause, the matter came on to be heard in such court and cause, and thereupon the court made and entered the following order, omitting the first part which it is not necessary to set forth, as it was a simple order to sell the mortgaged property:

"And if said property is insufficient to satisfy said claim, then said administrator is authorized and directed after giving due notice as provided by law, to sell from the residue of such estate as much as may be necessary to satisfy the balance due upon said claim,"

duly signed; that under and pursuant to said order, notice of sale of the premises described in said mortgage was duly given, and a sale thereof regularly held, and the amount of the bid was not sufficient to pay the mortgage indebtedness; that thereupon, without proof of any deficiency and without further order or direction of the court as to the sale of any other property, and without any further petition or order in that regard whatsoever, another notice of administrator's sale was given by the administrator that, on June 16, 1900, he would sell, at the front door of the courthouse in the city of Seattle, King county, Washington, at public auction, to the highest bidder for cash, according to law and the order of the court, the remainder of the said real estate inventoried and including the aforesaid lots 8 and 9, of block 6, Plan of South Seattle; stating in such notice that such sale was to be made to raise the balance of any claim of said William Curtis Ward; that at such date sale was made and return made in the usual manner to said court, reciting that the said sale had been made according to the notice given, and that all of the property listed in the inventory of said estate had been sold; that on July 2, 1900, an order confirming sale was made

by said court, in which said notices are recited and in which it was recited that the administrator had duly made his return on the sale, and that it had been proved to the court; that in pursuance of due notice, as required by law, wherein said property was described with sufficient certainty, a sale of all property listed in said inventory had been made to said William Curtis Ward, etc., and that the amount bid was not disproportionate to the value of said property, and an order was made confirming the sale; that the administrator was directed to execute and deliver to the purchaser a proper conveyance of said real estate; that thereafter the said administrator executed to said William Curtis Ward an administrator's deed, sufficient in form and complying with the law in regard to administrator's deeds. Upon these facts—and the facts found by the court are not excepted to by either appellant or respondent—the court concluded that no title passed to William Curtis Ward to the lots in controversy by virtue of the administrator's sale mentioned.

In this conclusion we think the court erred. It is the contention of respondent, that no representation was made in the petition sufficient to call forth the power of the court to decree a sale of the unincumbered property; that Ward's petition presented only the facts necessary to inform the court that he had a good mortgage, and that the only other matter to be decided upon the hearing was whether it would be expedient to redeem the mortgaged property. It is objected that it did not give a list of the debts outstanding, except the debt of the petitioner; that it did not describe all the real estate—only the mortgaged property—and did not state the condition and value of any; that it did not give the names and ages of the heirs; that it was in violation of Bal. Code, § 6289, which provides:

"If said sale of the mortgaged premises shall be insufficient to secure the mortgage debt, the mortgagee shall file a claim for balance, authenticated as other claims and payable in due course of administration."

It doubtless is a fact that some of the things required by the statute were not set forth in the petition in this case; but the record does show that the court had jurisdiction of the subject-matter, viz., the property sold, and of the administrator as an officer of the court, and that the omission of statutory provisions was an irregularity which was cured by § 3 of the act of March 28, 1890 (Laws 1889-90, p. 82), which is as follows:

"If the validity of a sale is drawn in question by a person claiming adversely to the title of the deceased, or the ward, or claiming under a title that is not derived from or through the deceased or ward, the sale shall not be void on account of any irregularity in the proceedings if it appears that the executor, administrator or guardian was licensed to make the sale by a probate or superior court having jurisdiction of the estate, and that he did accordingly execute and acknowledge, in legal form, a deed for the conveyance of the premises." Bal. Code, § 6475.

Now, there can be no question but that the court making this order had jurisdiction of the estate; that he made an order of sale; and that the administrator did accordingly execute and acknowledge in legal form a deed for the conveyance of the premises after having made the sale. It seems to us the case falls squarely within the rule announced in *Ackerson v. Orchard*, 7 Wash. 377, 34 Pac. 1106, 35 Pac. 605, where it was decided that, although the petition for an order for the sale of real estate is defective and irregular for the reason that it fails to describe all the decedent's real estate, and fails to state the amount of personal estate coming into the administrator's hands and his disposition thereof, and does not set forth the value of the lands other than by reference to their appraised value, such irregularities will not affect the jurisdiction of the court to order the sale.

The court in the trial of this cause found, that the probate court had jurisdiction to administer the estate of the deceased; that the administrator was duly qualified; that an inventory had been filed, and that the lots described were set

forth in the inventory; and while it is true that the petition
to sell does not specify the lots, it asked for the sale of the
balance of the real estate, if it was necessary to sell it for the
purpose of paying the mortgage debt; and the order was
directly made by the court to sell the additional property if
it were found necessary to sell it for that purpose. The or-
ders and petitions being construed together, there was no lack
of notice given to those who were interested as to what was
actually asked for and intended to be accomplished, so far
as the particular lands sold are concerned. It is true that
there was no showing made to the court, after it was ascer-
tained that the mortgaged property did not realize the
amount of the mortgage indebtedness; but this possibility
was anticipated in the application to sell, and in the direct
order of the court that it should be sold in case the realization
from the mortgaged property was not sufficient. While it
would have been more in harmony with the direct provisions
of the statute for this showing to have been made after the
sale of the mortgaged premises and the application made at
that time, these matters are only irregularities and did not
go to the jurisdiction of the court or to the essential merits
of the case. The notice, which was the important thing, was
given as effectively in the one instance as it could be in the
other, the notice to show cause why the order of the court
should not be carried into effect having been regularly pub-
lished and served; and upon the hearing, in pursuance of the
order to show cause, the court made a direct and positive
order to sell the residue of the estate, the inventory of which
had been previously filed showing that there was no personal
property belonging to the estate. Hence there was no neces-
sity for the carrying out of the statutory provision in rela-
tion to showing in that regard, at the time of the application
to sell the real estate.

The court finds that, in pursuance of said order, notice was
given, and a sale was regularly held which was afterwards
confirmed; and in the order confirming the sale the court

finds that the administrator had duly made his return of sale, and that it had been proved to the court; that in pursuance of due notice as required by law, wherein said property was described with sufficient certainty, the sale had been made, and that the sum paid was not disproportionate to the value of said property. The jurisdictional facts being established, it being shown that the matters which were claimed to have been omitted did not reach the merits of the case, that no one was or could have been misled in any way by such omissions, it seems to us that the case falls squarely within the statute which we have cited above; that the statute was enacted for the purpose of meeting just such cases as this; that it is the policy of the law that irregularities of this kind should be seasonably called to the attention of the court at the time when confirmation is asked for, and that the confirmation forecloses all irregularities of this kind. We, therefore, think that the deed passed good title to the lands in question to the appellant in this case.

The court also found that the appellant had not established the invalidity of the tax foreclosure sales of said lots 8 and 9. The finding of the court in regard to that branch of the case, in brief, was as follows: That these lots 8 and 9 were assessed on the assessment and tax roll of King county, Washington, to unknown owners, for the year 1895 to and including the year 1900, except for the year 1899; that in said year the property was assessed to one George R. Fisher; that on December 27, 1900, the treasurer of King county issued to Anna F. Smith a delinquency tax certificate for the year 1896 to the lots above described; that in such certificate it was stated that the owner of said premises was unknown, and that the said Anna F. Smith paid the taxes for the succeeding years, viz., 1897-8-9, as subpayments under said certificates; that on January 28, 1901, the said Anna F. Smith filed, in the superior court of King county, state of Washington, her application to foreclose said certificates of delinquency, in which such application said Anna F. Smith

was named as plaintiff and W. I. Wadleigh, Anna Wadleigh his wife, George I. Fisher as trustee, and the First National Bank of Seattle, were named as defendants, and no other persons were named or referred to as defendants therein, and no mention was made of any persons unknown. The court found that each of said named defendants was a stranger to the title of said lots 8 and 9, and none of them had any interest therein whatever as a matter of fact; that notices and summonses in said causes, regular in form and substance, were directed to and personally served upon said named defendants, and no other persons, but that no summons was published in either of said actions, no service of notice was made in any manner upon unknown owners, no other or different applications for judgment were ever made, and no other notices or summonses were ever issued or served. Thereafter, in such tax foreclosure actions, default judgments were entered against all of the named defendants, and the lien was foreclosed, and sale was made in accordance with the provisions of the law. So that the question here is, did the court, under these proceedings, obtain jurisdiction to foreclose these certificates of delinquency and sell this land. If not, the sale was void and the court erred in its conclusion of law.

This action was prosecuted prior to the amendment of 1901 (Laws 1901, p. 385, § 3), which provides that the names of the person or persons, appearing on the treasurer's rolls as the owner or owners of said property for the purposes of this act, shall be considered and treated as the owner or owners of said property; but was prosecuted under the laws of 1899 (Laws 1899, p. 297, § 15), which contain no such provision nor attempt to define the owner. So that the owner must be construed under that law to be an owner of the land as the word is generally understood in statutes and in common parlance. It seems elementary that, if these persons named as defendants in this proceeding were not, as the court has found, owners of the land, and had not any interest therein whatsoever, as a matter of fact, and that

the said George I. Fisher had no actual interest or ownership either individually or as a trustee, and there was no other notice given by publication or otherwise to any one else, the court could not have obtained jurisdiction to order the sale of these lots, and that the true owner has never had his day in court. This is not an irregularity, but a question of notice going to the jurisdiction.

It is urged by the respondent that, for aught shown by the record in this case, there was a service made after that date and before the decrees; that it will not be presumed that the court acted without jurisdiction; that every presumption is in favor of the validity of the decrees; and that the presence of one defective service in a record does not rebut the presumption that another service was made if time enough elapsed before decree. This, no doubt, is true with reference to decrees of courts of general jurisdiction; but that question is foreclosed in this case by the findings of the court, which stand here as the true record of the case. The case came up purely upon the question of whether the findings support the judgment, and the findings affirmatively show that no other persons were served, and that no summons by publication was ever issued.

We think the court acted without jurisdiction in the sale of these lots, and that the title of the appellant was good. The judgment will therefore be reversed, with instructions to enter a judgment according to the prayer of the complaint.

RUDKIN, C. J., PARKER, MOUNT, and CROW, JJ., concur.